UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **BRANDON GWIN AND AMIE GWIN** | **CIVIL ACTION NO. 16-1222** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **LIBERTY MUTUAL INSURANCE COMPANY AND USAA INSURANCE COMPANY** | **MAG. JUDGE KAREN L. HAYES** |

### RULING

This is a dispute over homeowner's insurance benefits. Defendant Liberty Personal Insurance Company ("Liberty") issued a homeowner's insurance policy to Plaintiffs Brandon Gwin and Amie Gwin, effective March 12, 2016, to March 12, 2017. However, on July 6, 2016, Liberty rescinded the homeowner's insurance policy for alleged misrepresentations by the Gwins. The Gwins subsequently brought suit against Liberty.

Pending is Liberty's Motion for Summary Judgment [Doc. No. 12]. For the following reasons, the Motion for Summary Judgment is GRANTED.

### I. FACTS AND PROCEDURAL HISTORY

The Gwins owned a home located at 187 Sonny Road, Monroe, Louisiana. On May 16, 2015, Garrison Property and Casualty Insurance Company ("Garrison") issued a policy of homeowner's insurance, bearing policy number GAR 01563 68 28 90A, to Brandon Gwin for the Sonny Road home.[1]

---

[1] Garrison is a subsidiary of its parent company, USAA Casualty Insurance Company, and was improperly identified in the original petition as USAA Insurance Company. Garrison has also filed a Motion for Summary Judgment [Doc. No. 17], which the Court will address separately.

Effective December 16, 2015, Garrison cancelled the policy it issued for non-payment.[2]

On or about March 10, 2016, record rainfall in the Monroe region caused widespread flooding. The Gwins evacuated their home that day.

The following day, March 11, 2016, Amie Gwin contacted Garrison about the homeowner's policy to ensure that the Gwins were covered for damage other than flooding. Mrs. Gwin told the representative during the call that the home was flooded or was going to flood. It is undisputed that she was told by a representative that the Garrison policy was cancelled in December 2015. It is also undisputed that she was informed that USAA and all its subsidiaries (including Garrison) were unable to re-write similar coverage on the Sonny Road property because of the "unrepaired damage," which was "not cosmetic," after Mrs. Gwin had disclosed the current or imminent flooding situation. [Doc. No. 12-1, Exh. 5].

The same day, Mrs. Gwin called Liberty seeking to obtain a homeowner's insurance policy. As part of the application process, Mrs. Gwin was required to provide certain information. When asked, she knowingly and falsely denied having any homeowner's policy cancelled, declined, or non-renewed in the past year.[3] In fact, she told the representative that her Garrison Policy did not expire until August 31, 2016, which was not true.

According to Liberty's transcript of the call, Mrs. Gwin also failed to disclose that her

---

[2]The Court will address the circumstances of cancellation and whether the cancellation was effective in its ruling on the Garrison Motion for Summary Judgment. For purposes of this Ruling, the Court limits its review of the facts on the Garrison policy to those pertinent to Liberty's Motion for Summary Judgment.

[3]Mrs. Gwin testified that she "didn't want to say our policy had been cancelled when I didn't believe that it was cancelled because I didn't want that to hinder (the application)." [Doc. No. 12-1, Exh. 1, p. 94].

home had flooded, even when asked if the area was prone "to flood or earthquakes." [Doc. No. 12-1, Exh. 8(A) at Liberty-1559].[4] Mrs. Gwin claims that she did disclose this information, but has no evidence other than her recollection. During the call, Mrs. Gwin also denied, despite the known damage from flooding, that she was "doing any sort of construction or remodeling" or that there were any "physical conditions . . .[at the home] that can cause injuries like broken windows, uneven walkways, along those lines[.]" [Doc. No. 12-1, Exh. 8(A), at Liberty-1560].

After the telephone call, Brandon Gwin electronically signed a written application that also answered "no" to the question whether he had ever had a homeowner's policy cancelled, declined, or non-renewed; denied that the home was "[u]nder construction" or "[u]ndergoing significant renovation or remodeling," and denied that there were "any physical conditions . . . in need of repair which clearly present a likelihood for injury[,]" such as "[p]orch or deck without adequate rails or supports, severely broken walkways, unfenced swimming pools, trampolines, etc." [Doc. No. 12-1, Exh. 8(A), at Liberty-161; Exh. 1, at 79:10-17, 72:13-73:24 & 78:22-79:9].

The Liberty application Mr. Gwin signed contained the following warning:

> [I]t is agreed that this form and the answers provided by you to questions asked as part of the application process shall be the basis of the contract should a policy be issued. In the event that **any material misrepresentations, omissions, concealment of facts and/or incorrect statements are made by or on behalf of the insured** during the application process, we may exercise whatever legal remedies may be available to us under the laws and regulations of this state.

[Doc. No. 12-1, Ex. 8(B), at Liberty-162 (emphasis added)].

Liberty issued homeowner's insurance policy no. H3F-298-106767-70 ("the Policy") to

---

[4]Mrs. Gwin disingenuously replied that she "live[s] in Louisiana so flooding, yeah, it could be a possibility" when, in fact, flooding was the current reality at her home. [Doc. No. 12-1, Exh. 8(A), at Liberty-1559].

3

the Gwins, effective March 12, 2016, to March 12, 2017. The Policy contains a provision on concealment or fraud:

> **2. Concealment Or Fraud**
>
> a. Under Section I – Property Coverages,
> (1) With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:
>   (a) Intentionally concealed or misrepresented any material fact or circumstance;
>   (b) Engaged in fraudulent conduct; or
>   (c) Made false statements relating to this insurance.

[Doc. No. 12-1, Exh. 7, at Liberty-33]. At the time the Policy issued, the home was unoccupied and had flooded. According to Mrs. Gwin, the water level in the house eventually reached four or five feet.

According to the Director of Complex Loss Issues for Liberty Mutual Group, Inc., if the Gwins had informed Liberty that their Garrison policy had been cancelled for non-payments of premiums or that their home was already flooded or flooding was imminent, Liberty would have rejected their application. [Doc. No. 12-1, Exh. 8].

Six weeks after the Policy issued, on April 25, 2016, the Gwins' property was completely destroyed by fire, and they submitted a claim for the loss.[5]

Liberty investigated the Gwins' claim and learned that they may have made misrepresentations in the application process. To investigate further, Liberty took examinations under oath of Brandon and Aimee Gwin on June 14, 2016. During her examination, Mrs. Gwin admitted that she gave Liberty false information about her prior homeowner's policy with

---

[5]The Gwins' home was also burglarized twice before the fire.

Garrison, although she claimed that she did tell Liberty that her home was flooded or flooding.[6] She did not have evidence or proof to refute the transcript Liberty provided, other than her own recollection.

On July 6, 2016, Liberty informed the Gwins that it was rescinding the Policy because of their material misrepresentations.

On July 14, 2016, the Gwins filed a Petition in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, asserting that Liberty wrongfully denied their claim and rescinded the Policy. The Gwins seek to recover the limits of their Policy of $210,800, for damage to their home, $79,000 for damage to personal property, and penalties and attorney's fees for Liberty's alleged bad faith. Liberty removed the case to this Court on August 26, 2016.

On May 5, 2017, Liberty filed the instant Motion for Summary Judgment [Doc. No. 12], arguing that it had properly rescinded the Policy because of the Gwins' material misrepresentations.

On May 8, 2017, a Notice of Motion Setting [Doc. No. 13] issued setting an opposition deadline of 21 days after the issuance of the notice. Although the deadline would normally have fallen on May 29, that date was a federal holiday, so the deadline for opposing the Motion for Summary Judgment was May 30, 2017.

On June 2, 2017, three days late, the Gwins filed an opposition memorandum without

---

[6]In their Petition, the Gwins allege that "Mrs. Gwin answered the questions about her application truthfully. She advised that although water had not entered their home, it was rising fast enough that flooding was inevitable." [Doc. No. 1-2, Petition, ¶ 9]. However, the Petition appears to be unverified, and the transcript indicates otherwise. Mrs. Gwin admitted at her deposition that the transcript of the call was accurate. [Doc. No. 12-1, Exh. 8, Amie Gwin Depo., pp. 66-67]. She later "[a]greed" with Liberty's counsel that she did not tell its representative that the "house was already flooded or soon would be flooded." *Id.* at p. 70.

seeking leave of Court. [Doc. No. 19]. The Gwins contend that Liberty failed to prove their intent to deceive or that their alleged breach increased the moral or physical hazard under the Policy with regard to their failure to disclose the cancellation of their Garrison policy. They deny that there was any misrepresentation with regard to construction or remodeling.

On June 12, 2017, Liberty filed a reply memorandum. [Doc. No. 21]. Liberty contends that the Court should not consider the Gwins' untimely opposition. Alternatively, even if the Court does consider the opposition memorandum, Liberty argues that it is entitled to summary judgment because it properly rescinded the Policy based on two separate, intentional misrepresentations.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

### B. Timeliness of the Gwins' Opposition

Liberty is correct that the Gwins filed an untimely opposition memorandum without leave of Court. However, the Court finds that the striking of such memorandum or declining to consider it is too great a penalty for a three-day delay in filing. Counsel for the Gwins does not have a history of failing to comply with the Court's orders, nor is there any prejudice to Liberty by such a short delay. Accordingly, the Court will consider the entire record in ruling on the instant Motion for Summary Judgment. However, counsel is aware of the process for obtaining a short extension and has done so in the past. Counsel is cautioned that he is always expected to comply with notices of motion setting, and his failure to do so in the future could result in sanctions.

### C. Motion for Summary Judgment

Liberty moves the Court for summary judgment arguing it properly rescinded the Policy after learning that the Gwins lied about the cancellation of their Garrison policy, that flooding had or would begin shortly in their home, that they failed to disclose that they had evacuated the home, and

that renovations or construction would be necessary. The Gwins respond, first, that Liberty analyzed their claims under the wrong statute. While the Gwins admit that Mrs. Gwin had been informed about the cancellation of the Garrison policy, she denies that she believes that it was properly cancelled, and, therefore, she had not deceived Liberty. Even if her statement and that of Mr. Gwin on the application are considered misrepresentations, under application of the statute on fire policies, they argue that the misrepresentation did not increase the moral or physical hazard under the Policy. Finally, they argue that they anticipated flooding, but they could not know at the time they applied for the Policy as to whether they would need construction or renovation, and, therefore, they did not make misrepresentations to Liberty in this regard. In reply, Liberty argues that it has applied the correct statute for homeowner's policies, but acknowledges that the case law is somewhat unclear. Even if the statute cited by the Gwins is applicable, however, Liberty argues that the standard under that statute is even less favorable, and it properly rescinded the Policy under either standard.

As a federal court is sitting in diversity, the Court applies the substantive law of Louisiana, the forum state. *See, e.g., Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).[7]

First, the Court considers the two statutes cited by the parties. Louisiana Revised Statute 860(A) provides in pertinent part: "no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." Louisiana Revised Statute 22:1314(A) provides:

---

[7]The parties do not dispute that Louisiana law governs this case, as the contract was formed in this state.

> No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty, or condition contained in such policy or in the application therefor. Such breach shall not allow the insurer to avoid liability unless such breach: (1) exists at the time of the loss, and be such a breach as would increase either the moral or physical hazard under the policy; or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business.

The Louisiana Supreme Court has observed that fire insurance policies and homeowners policies are "separate and distinct . . . although both policies insure against the peril of fire." *Landry v. La. Citizens Prop. Ins. Co.*, 2007-1907 (La. 5/21/08), 983 So.2d 66, 74 n.10. "The Louisiana Legislature has specifically recognized a difference between a fire insurance policy and a homeowners' policy by defining them separately in La. R.S. 22:6[.]" *Id.* Thus, the *Landry* dicta suggests that the Louisiana Supreme Court would find that the application of § 22:1314 is limited to fire policies, not homeowner's policies which insure against the peril of fire.

Further, although the Gwins point out that § 22:860(B) (recently applied by this Court in a prior case) is applicable only to life, annuity, and health and accident insurance, § 22:860(A) has no such limitation. Subsection A, by its plain language, applies to any insurance contract, obviously including a homeowner's policy. *See, e.g., Katl v. Chevalier*, 2015-1028 (La. App. 3 Cir. 3/23/16), 188 So.3d 449, 455 ("We have previously held that in interpreting this statute, an insurer has the burden of proving whether an insured made material misrepresentations sufficient to rescind the automobile insurance policy.") (citing *Abshire v. Desormeaux*, 07-626 (La.App. 3 Cir. 11/7/07), 970 So.2d 1188, writ denied, 08-226 (La.4/4/08), 978 So.2d 326). The general rule in subsection A is then further excepted for certain types of policies: (1) the life, annuity, and health and accident insurance policies addressed in subsection B and (2) policies "of fire insurance" addressed in §§

9

22:1314 and 1315.

On the other hand, there is no controlling authority as to which statute should be applied. In decisions prior to *Landry,* Louisiana courts, including the Louisiana Supreme Court, have "not been loathe to extend the application of [§ 22:1314]" and have applied it to policies "covering fire and property damage."[8] *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 381-82 (5th Cir. 1987). Finally, the Louisiana Supreme Court's comments in *Landry* are merely dicta. The *Landry* Court assumed *arguendo* that the questionable statute[9], which provided a method of computation of loss for fire policies, **did** apply to a homeowner's policy since the parties did not raise the issue, and the Court would have reached "the same result whether the statute applies or does not apply." 983 So. 2d 66 at 74-76.

After careful review, the Court declines to reach this issue and finds that under application of either statute, La. Rev. Stat. § 22:860[10] or La. Rev. Stat. 22:1314,[11] Liberty is entitled to summary judgment. Under § 22:860, to void coverage on grounds of misrepresentation, the insurer must show that (1) the insured made a false statement in his application for the insurance policy, (2) the false statement was made with the intent to deceive, and (3) the false statement materially affected the acceptance of the risk by the insurer or the hazard assumed. *Wohlman v. Paul Revere Life Ins. Co.*, 980 F.2d 283, 285-86 (5th Cir. 1992) (citing *Coleman v. Occidental Life Insurance Co. of N.C.*, 418

---

[8]*See, e.g., Grice v. Aetna Cas. & Sur. Co.*, 359 So.2d 1288 (La. 1978); *Rodriguez v. Northwestern Nat. Ins. Co.*, 358 So.2d 1237 (La. 1978); *Lee v. Travelers Fire Ins. Co.*, 219 La. 587, 53 So.2d 692 (1951).

[9]The statute at issue was formerly numbered La. Rev. Stat. § 22:695.

[10]This statute was formerly numbered La. Rev. Stat. § 22:619.

[11]This statute was formerly numbered La. Rev. Stat. § 22:692.

So. 2d 645, 646 (La.1982); *Clark v. Golden Rule Ins. Co.,* 887 F.2d 1276, 1281 (5th Cir. 1989)). In order for Liberty to show the Gwins' intent to deceive, strict proof of fraud is not required; rather, intent can be determined from the surrounding circumstances indicating that the Gwins knew their representations were false and recognized that they were material. *Willis v. Safeway Ins. Co. of Louisiana*, App. 2 Cir.2007, 42,665, p. 7 (La.App. 2 Cir. 10/24/07); 968 So.2d 346, 350. A misrepresentation is material if the truth would have resulted in the insurer not issuing the policy of insurance or issuing the policy at a higher rate. *Abshire v. Desmoreaux*, 2007-626, p. 9 (La.App. 3 Cir. 11/7/07); 970 So.2d 1188, 1196.

The Court finds that Mrs. Gwin orally made false statements and Mr. Gwin made false statements in writing when they denied and/or failed to disclose that the Garrison policy had been cancelled and not renewed.[12] Likewise, they made false statements when they failed to disclose the fact that their house was flooded or imminently flooded as a "physical condition . . . in need of repair" that "can cause" or "clearly presented a likelihood for" injury.[13] While the home was not

---

[12] Mrs. Gwin's affidavit does not create an issue of fact for trial. [Doc. No. 19, Exh. 5]. While she explains the circumstances of the alleged cancellation of the Garrison policy and why she disagrees that the policy was **properly** cancelled, it is an undisputed fact that she was informed by the Garrison representative that the policy had been cancelled prior to her statements otherwise to Liberty. Likewise, Mr. Gwin's belief that Mrs. Gwin "had good reason to doubt" the policy had been properly cancelled fails to raise a genuine issue of material fact for the same reason. [Doc. No. 19, Exh. 6].

[13] Mrs. Gwin's affidavit also fails to create an issue of fact with regard to the disclosure of flooding. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citation omitted); *Love v. Motiva Enterprises LLC*, No. 08-30996, 2009 WL 3334610, at *2 (5th Cir. Oct. 16, 2009) ("[A]n affidavit in opposition to summary judgment that contradicts without explanation deposition testimony is properly disregarded."). While she says that she "did not conceal the fact that flood waters were rapidly approaching my home, nor was I asked a question that would have required a statement to that effect," her deposition testimony and her admission with regard to the transcript

currently under construction or renovation, and, thus, the Court cannot say, as a matter of law, that the Gwins falsely answered "no" to questions about construction and renovation, they were aware of the requisite physical condition that they failed to disclose. This failure to disclose is more blatant when viewed in the context of Mrs. Gwin's deflection that they live "in Louisiana, so flooding, yeah, it could be a possibility" when it was reality at the time of the conversation.

These false statements were also material in that Liberty would not have issued the Policy had it known of the cancellation or the flooding. Although Mrs. Gwin is "sure" that she informed the Liberty representative of flooding, the transcript of her telephone call, which she admits is correct, clearly shows otherwise.[14]

Finally, Liberty has produced sufficient evidence, based on the circumstances, for the Court to find, as a matter of law, that the Gwins had the intent to deceive in order to obtain insurance. Specifically, at the time that Mrs. Gwin spoke with a Liberty representative, she had just learned that

---

of the telephone call provide otherwise. [Doc. No. 19, Exh. 5]. The Court will disregard her contradiction of her sworn testimony.

[14]In this regard, the Court does not disregard Mrs. Gwin's belief, but considers that she may simply be recalling her earlier conversation with the Garrison representative on what was obviously a stressful day. However, her emphatic recollection cannot create a genuine issue of material fact for trial when she has produced no evidence to show that the transcript was incomplete or otherwise inaccurate.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Orr v. Copeland*, 844 F.3d 484, 491 (5th Cir. 2016) (quoting same). Although the *Scott* case relied on a video of a police chase, the Court finds the principal applicable here. Mrs. Gwin does not question the reliability of the transcript after reviewing it along with the actual recording of her telephone call with the Liberty representative, but, yet, tries to raise a genuine issue of material fact for trial that contradicts that record.

their Garrison policy had been cancelled and would not be reissued, and she was aware that this information could cause problems in obtaining a new policy.[15] Therefore, under the standard to § 22:860, Liberty is entitled to summary judgment in this matter.

Moreover, the Court would reach the same result if La. Rev. Stat. § 22:1314 applies to a homeowner's policy insuring against the peril of fire. Under § 1314, Liberty could declare the Policy void for the Gwins' "breach of a representation, warrant or condition contained in such policy or in the application therefor" if the breach "exist[ed] at the loss, and [was] such a breach as would increase either the moral or physical hazard under the policy[.]" La. Rev. Stat. § 22:1314(A). To meet the showing of an increased physical hazard, the insurer must demonstrate that there is "an increase in the potential for the insured peril by [the] change in the physical circumstances surrounding the insured property[.]" 15 LA. CIV. L. TREATISE, INS. L. & PRAC. § 10: 330. The case law does not appear to require that there must be a specific link between the hazard and the loss itself. *See id.* at §§ 10:326-328.

In this case, both the application and the Policy warned against the applicant/insured's misrepresentation of material facts, concealment or failure to disclose such facts, and the making of incorrect or false statements. While the Gwins' false statements regarding the cancellation of their Garrison policy could not be said to increase the physical hazard, their failure to disclose the physical condition of their property–that it was flooding or would imminently flood– and that they had evacuated **did** increase the physical hazard, including lossese that actually occurred in this case of burglary and fire. *See Doucette v. La. Citizens Coastal Plan*, 12-52 (La. App. 5 Cir. 5/22/12), 96

---

[15]Mr. Gwin's affidavit in which he offers his opinion that Mrs. Gwin did not "intend to deceive" Liberty is not evidence and does not create a genuine issue of material fact for trial. [Doc. No. 19, Exh. 6].

So.3d 1236-1239-40. Accordingly, the Court finds that Liberty is also entitled to summary judgment under application of this statute .

III. **CONCLUSION**

While the Court recognizes the unfortunate predicament in which the Gwins found themselves, there is no genuine issue of material fact for trial that they made misrepresentations to Liberty which legally permitted it to rescind the Policy and deny coverage. Thus, for the foregoing reasons, Liberty's Motion for Summary Judgment is GRANTED, and the Gwins' claims against this Defendant are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 17th day of August, 2017.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE