UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **BRANDON GWIN AND AIMEE GWIN** | **CIVIL ACTION NO. 16-1222** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **LIBERTY MUTUAL INSURANCE COMPANY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This is a dispute over homeowner's property insurance benefits. Defendant Garrison Property and Casualty Insurance Company ("Garrison")[1] issued a homeowner's insurance policy to Plaintiff Brandon Gwin. Garrison later cancelled the policy for nonpayment of premiums, but the parties dispute whether the cancellation was effective prior to the date of Plaintiffs' loss.

Pending before the Court is Garrison's Motion for Summary Judgment [Doc. No. 17]. For the following reasons, the Motion for Summary Judgment is GRANTED.

**I.  FACTS AND PROCEDURAL HISTORY**

Brandon and Aimee Gwin ("the Gwins") owned a home located at 187 Sonny Road, Monroe, Louisiana. On May 16, 2015, Garrison Property and Casualty Insurance Company ("Garrison") issued a policy of homeowner's insurance, bearing policy number GAR 01563 68 28 90A ("the Policy"), to Brandon Gwin for the Sonny Road home. The Policy provides that a "resident spouse" (Aimee Gwin) may conduct the same transactions under the Policy as a "member" (Brandon Gwin).

---

[1] Garrison is a subsidiary of its parent company, USAA Casualty Insurance Company, and was improperly identified in the original petition as USAA Insurance Company.

It is undisputed that Aimee Gwin was responsible for paying the insurance premiums. The Homeowner's Policy Packet was sent to the Gwin home address and to the attention of Aimee Gwin, who confirmed receipt. She elected to make monthly premium payments on the Policy and to receive monthly statements via electronic mail at aimee0323@yahoo.com.

By November 2015, the Gwins had failed to timely make multiple premium payments. The Policy contained the following provision on cancellation for non-payment of premium:

> 4. Cancellation
>  . . .
>
> b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you by postal mail at your mailing address shown in the Declaration or provided by you electronically if we have your consent and agreement on file to receive documents electronically.
>
> Proof of mailing, whether by postal mail or by electronic media of communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox of voice channel that you designate for the purpose of receiving mail.
>
>> (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

[Doc. No. 17-6].

Under the Policy, Garrison accelerated the balance due. On or about November 27, 2015, Garrison[2] sent a Notice of Cancellation for Nonpayment of Premium ("Notice of Cancellation")

---

[2]In its memorandum, Garrison refers to actions by "USAA"; however, Garrison is the proper Defendant. The Court understands that it is undisputed, at least for purposes of this motion, that any actions taken in the name of Garrison and/or USAA are attributable to Garrison, and has, therefore, used "Garrison" throughout to avoid confusion.

2

by electronic mail to Aimee Gwin at the email address provided. The Notice of Cancellation contained a statement that payment under the Policy had been placed on "the pay in full payment plan'" because of the Gwins' nonpayment of the minimum monthly premiums. The Notice of Cancellation provided further that the Gwins were required to make a payment of $1,542.67 by December 16, 2015, to prevent cancellation for nonpayment of premiums.

In addition to the electronic mail notification, on November 30, 2015, Garrison sent the Notice of Cancellation to the Gwins' home address via USPS certified mail. A USPS employee left a notice at the Gwin residence on December 3, 2015, instructing the Gwins to pick up the item at the USPS post office, but the Gwins failed to do. From notations on the envelope, it appears that the USPS attempted to deliver the Notice of Cancellation at least one more time on December 22, 2015.[3] Aimee Gwin denies receiving notice from the USPS about this attempted delivery.

On December 9, 2015, Garrison received an electronic payment from the Gwins of $300.00. No further payments were made on the Policy prior to December 16, 2015.

Effective December 16, 2015, Garrison cancelled the Policy.

On December 30, 2015, Garrison sent a final statement to Aimee Gwin indicating a Policy Cancellation Credit in the amount of $1,505.05 and a remaining balance of $53.29. The December 30, 2015 final statement explained that "[p]ayment of this outstanding balance will immediately close your account with USAA Property and Casualty Insurance. However, it does

---

[3]Garrison argues that the USPS apparently attempted to deliver on 12/30 as well, but that date has letters in front of it that could be "KT" or "RT." The Court suspects from its review of other mail in cases in this Court that the letters are in front of it are "RT" and indicate that the Notice of Cancellation of Nonpayment for Premiums was returned on December 30, 2015. [Doc. No. 17-2, Exh. E].

not assure acceptability for future insurance." [Doc. No. 17, Exh. D & D-3].

On January 7, 2016, Garrison received an electronic payment from Aimee Gwin in the amount of $53.29, the remaining balance.

Garrison sent Aimee Gwin a final letter on that same date, January 7, 2016, thanking her for the payment of $53.29 and advising her that, while the account is now up to date, this most recent payment "doesn't reinstate your previously cancelled insurance coverage." [Doc. No. 17, Exh. D & D-4]. Aimee Gwin denies receiving this letter.

After January 7, 2016, neither Garrison nor USAA sent notice or billing statements to the Gwins regarding any homeowner's insurance coverage. The Gwins did not make any further payments after this date for the months of February or March or thereafter.

On or about March 10, 2016, record rainfall in the Monroe region caused widespread flooding. The Gwins were aware that they did not have flood insurance. However, Brandon Gwin spoke with his wife about inquiring about the status of any other insurance coverage.

The Gwins evacuated their home that day, and the house was flooded or was going to flood imminently.

The following day, March 11, 2016, Aimee Gwin contacted Garrison about the homeowner's policy. Mrs. Gwin told the representative during the call that the home was flooded or was going to flood. A Garrison representative informed her that the Policy was cancelled in December 2015. She was also informed that USAA and all its subsidiaries (including Garrison) were unable to re-write similar coverage on the Sonny Road property because of the "unrepaired damage," which was "not cosmetic," after Mrs. Gwin had disclosed the current or imminent flooding situation. [Doc. No. 12-1, Exh. 5].

The same day, Mrs. Gwin called another insurer, Liberty, seeking to obtain a homeowner's insurance policy, but failed to disclose that Garrison had cancelled the Policy, that the home was flooding or would imminently flood, and that they had evacuated the home. Liberty issued a homeowner's policy to the Gwins.

Six weeks after the Gwins were informed the Policy had been cancelled, and the Liberty policy issued, on April 25, 2016, the Gwins' property was completely destroyed by fire, and they submitted a claim for the loss to both insurance companies.[4]

After an investigation, Liberty rescinded the policy it issued based on the Gwins' misrepresentations.

On July 14, 2016, the Gwins filed a Petition in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, asserting that Garrison and Liberty both wrongfully denied their claims. The Gwins sought to recover the full loss of their dwelling and one-half of the loss of their contents from Garrison.

Liberty removed the case to this Court on August 26, 2016.

On June 1, 2017, Garrison filed the instant Motion for Summary Judgment [Doc. No.17], arguing that the Policy was cancelled effective December 16, 2015, and/or the Gwins waived their right to bring an action against Garrison for invalid cancellation of the Policy.

On June 2, 2017, a Notice of Motion Setting [Doc. No. 18] issued setting an opposition deadline of 21 days after the issuance of the notice. The deadline for opposing the Motion for Summary Judgment was June 23, 2017.

On July 7, 2017, fourteen days late, the Gwins filed an opposition memorandum without

---

[4]The Gwins' home was also burglarized twice before the fire.

explanation and without seeking leave of Court. [Doc. No. 23]. The Gwins contend that there is a genuine issue of material fact for trial as to whether Garrison effectively cancelled the Policy.

On July 21, 2017, Garrison filed a reply memorandum. [Doc. No. 25]. Garrison contends that the Court should not consider the Gwins' untimely opposition. Alternatively, even if the Court does consider the opposition memorandum, Garrison argues that it is entitled to summary judgment because the Gwins' opposition failed to raise a genuine issue of material fact for trial.

On August 17, 2017, the Court issued a Ruling and Judgment [Doc. Nos. 28 & 29] granting Liberty's Motion for Summary Judgment and dismissing the Gwins' claims against that Defendant.

The Court is now prepared to rule on Garrison's Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

**B.     Timeliness of the Gwins' Opposition**

As they did in regard to Liberty's Motion for Summary Judgment, the Gwins filed a clearly untimely opposition memorandum to Garrison's Motion for Summary Judgment without leave of Court. Unlike the short time delay with the Liberty opposition, the Garrison opposition was two weeks late. Counsel for Gwins is well aware of the procedure for seeking an extension of time, and his silence on this issue is perplexing. However, the Court again finds that striking the Gwins' memorandum or declining to consider it would result in too great a penalty to them, based on counsel's failure. As the Court previously noted, counsel for the Gwins does not have a history of failing to comply with the Court's orders, and, though the delay is longer, the Court finds no prejudice to Garrison. Accordingly, the Court will consider the entire record in ruling on the instant Motion for Summary Judgment. Counsel is again cautioned that he is always expected to comply with notices of motion setting, and his failure to do so in the future could result in sanctions, including the striking of untimely filings.

7

### C. Motion for Summary Judgment

Garrison moves the Court for summary judgment arguing it properly cancelled the Policy for nonpayment of premium, including following the statutory and Policy requirements for notice. Alternatively, Garrison argues that the Gwins have waived any lawsuit against it because of their own actions and inactions following their knowledge that the Policy had been cancelled. The Gwins respond that there is a genuine issue of material fact for trial whether the Notice of Cancellation was mailed or delivered in compliance with the applicable statute.

As a federal court is sitting in diversity, the Court applies the substantive law of Louisiana, the forum state. *See, e.g., Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).[5]

Louisiana Revised Statute § 22:887(A)(5) provides that an insurer can cancel an insurance policy "during the policy period for failure to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under a premium finance plan or extension of credit, by mailing or delivering to the insured written notice stating when, not less than ten days thereafter, such cancellation shall be effective." The statute provides further:

> B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the post office upon failure to find, or deliver the mailing to the addressee.
>
> C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein

---

[5] The parties do not dispute that Louisiana law governs this case, as the contract was formed in this state.

8

affirmed.

LA. REV. STAT. § 22:887(B)-(C).

"The purpose of the notice of cancellation is to make known to the insured that his policy is being terminated and to afford him sufficient time to obtain other insurance protection." *Broadway v. All–Star Ins. Co.*, No. 52987 (La. 9/24/73), 285 So.2d 536, 539. Interpreting an earlier version of this statute,[6] the *Broadway* Court held that the phrase "[m]ailed to the insured" does not mean simply the depositing of a notice addressed to the insured in the mail; rather, "mailed to the insured connotes a completed process, the transmission of the notice through the United States mails." *Id.* at 540.

However, the Louisiana Supreme Court has also recognized the difficulty of proving delivery, holding that an affidavit stating that the notice of cancellation was mailed establishes a rebuttable presumption, i.e, prima facie evidence, "that the cancellation notice [to the insured] was mailed according to the requirements of law." *Cuccia v. Allstate Ins. Co.*, 262 La. 545 (6/15/72), 263 So.2d 884, 887–88. After the insurer offers such an affidavit, the insured must offer affirmative proof to rebut the presumption. *See id.* at 888 (finding that "[t]he particular evidence" in *Cuccia* did not "change the presumption to an irrefutable position" when there were "many factual differences which [threw] doubt upon **the mailing of the notice** by the insurance company.") (emphasis added); *cf. Broadway*, 285 So.2d at 539 ("affirmative proof of non-delivery renders the notice ineffectual.").

In a more recent case interpreting a related statute governing non-renewal of homeowner

---

[6]The relevant statute was then codified at LA. REV. STAT. § 22:636 and required that "[w]ritten notice of such cancellation must be **actually** delivered or mailed to the insured or his representative . . . . not less than five days prior to the effective date of the cancellation." (emphasis added). *Id.* at § 22:636(A)(1).

9

insurance policies (rather than cancellation), the Louisiana Supreme Court has held that, because proof of receipt is not required by the statute, "any evidence of non-delivery is relevant only as far as it is evidence of non-mailing or improper mailing, which is an issue for the fact finder to resolve." *Johnson v. La. Farm Bureau Cas. Ins. Co.*, 60 So.3d 607, 608 (La.2011) (interpreting La. Rev. Stat. § 22:1335). In a recent case, Judge Elizabeth Foote of this District noted:

> Though *Johnson* interprets the statute governing non-renewal rather than cancellation, its holding appears to be in some conflict with the holding of the *Broadway* court that a finding of non-delivery requires a finding of improper mailing. However, a number of prudential factors counsel this Court not to delve too deeply into this jurisprudential thicket in order to attempt a resolution of this conflict: *Johnson* interprets a slightly different statute than the one governing this case; the parties have not directly addressed the apparent conflict in the jurisprudence in their briefs; and most importantly, the disposition of this motion for summary judgment is the same under either standard. Accordingly, the Court will assume for the purposes of this motion that proof of non-delivery does not conclusively show improper mailing.

*Easom v. Foremost Ins. Co.*, No. 5:11-CV-438, 2012 WL 5457376, at *3 (W.D. La. Nov. 1, 2012). Like Judge Foote, the Court recognizes that the later case interprets a different, but related statute. However, the concern with both statutes focuses on proper mailing, not proof of delivery or receipt. Otherwise, the use of the disjunctive "or" would have no meaning in the statute. *See* LA. REV. STAT. § 22:887(A)(5) (insurer can cancel policy for nonpayment of premium "by mailing **or** delivering" notice). Finally, the Court would note that the prior version of statute at issue required that notice was "actually delivered or mailed" to the insured, rather than the current version's requirement of "mailing or delivery." *Cf.* LA. REV. STAT. 22:636(A)(1) (in effect in 1973) *with* LA. REV. STAT. 22:887(A)(5) (effective January 1, 2009). Therefore, to the extent that *Johnson* may conflict in some measure with *Broadway*, that decision did not interpret the current language of the statute and, thus, is not dispositive.

In this case, Garrison has presented evidence in the form of an affidavit from Jesse Huerta ("Huerta"), a Business Process Consult in the Enterprise Document Management Group for USAA/Garrison. [Doc. No. 17-2, Exh. E]. Huerta avers that he is the individual who supervises all tasks related to the mailing and sending of mail correspondence, including notices of cancellation for nonpayment of premiums. He further avers that the November 27, 2015 Notice of Cancellation and a corresponding billing statement were deposited in a USPS Certified Mail sealed envelope on November 30, 2015, and mailed to "Aimee M. Gwin at 187 Sonny Rd., Monroe, LA 71202-7651." *Id.* Huerta attaches a copy of the USAA/Garrison USPS manifest to support his statements.

Huerta further attests that the Notice had a USPS tracking number and that a search of that number on the USPS website indicates that the postal employee attempted delivery, but no authorized recipient was available. According to USPS notations, the employee then left a notice with further instructions. When the Gwins failed to retrieve the envelope from the post office as instructed, it was returned to USAA/Garrison.[7]

Applying the plain language of the statute, the Court finds that there is no genuine dispute of material fact for trial that Garrison complied with § 22:887(A)(5) by mailing Aimee Gwin, the designated contact, written notice more than ten days prior to cancellation the Notice of Cancellations " in a sealed envelope, directed to the addressee at [her] last address . . . with proper prepaid postage affixed, in a letter depository of the United States Post Office." LA. REV. STAT. § 22:887(C).[8] Such mailing was supported properly by the Huerta affidavit and raised a rebuttable

---

[7]As previously noted, it appears that the USPS employee attempted to deliver at least one more time without success.

[8]The uncontroverted facts show that this mailing also complied with the Policy provision on cancellation for an insured's nonpayment of premium.

presumption of compliance. While the Gwins could rebut that presumption with proper evidence, they failed to do so. Although the Gwins deny receipt of the Notice of Cancellation by certified mail[9] (consistent with the USPS notations), the statute requires only that the insurer provide proof of mailing **or** delivering, not both.

Aimee Gwin baldly denies having received Notice of the Cancellation or Garrison's January 7, 2016 letter, which provided further notice of cancellation, but her bald denials of receipt alone are insufficient to rebut the presumption and to raise a genuine issue of material fact for trial.[10] This is particularly true in light of the other undisputed facts in this case. The Gwins do not dispute that Aimee Gwin received all other correspondence from Garrison either emailed or mailed to her at the email and mailing addresses provided EXCEPT the mailed Notice of Cancellation, the emailed Notice of Cancellation, and the January 7, 2016 letter. Further, it is undisputed that she made a payment of $53.29, the amount listed on the billing statement from Garrison, which clearly provided that "PAYMENT OF THIS OUTSTANDING BALANCE WILL IMMEDIATELY CLOSE YOUR ACCOUNT WITH USAA PROPERTY AND CASUALTY INSURANCE. HOWEVER, IT DOES NOT ASSURE ACCEPTABILITY FOR FUTURE INSURANCE." [Doc. No. 17-2, Exh. E, Johnny Almendarez Aff. & E-3]. Under these circumstances, Garrison has met its burden of showing that

---

[9]*See* [Doc. No. 17-2, Exh. B, Aimee Gwin Depo., p. 44 ("I don't recall this letter. . . I just remember getting a bill and I remember paying it.").

[10]*Cf. Easom,* 2012 WL 5457376, at *5 ("Furthermore, in this case Plaintiffs' affidavit does not contain only a bald statement that they did not receive notice. The affidavit also alleges **other facts that give the question of receipt of notice more probative value in the determination of whether notice was ever properly mailed.** An allegation of non-receipt will not always raise a genuine dispute of material fact regarding delivery. . . . In this case, however, the Easoms' affidavit does raise a genuine question of material fact, and therefore summary judgment is not appropriate.") (emphasis added).

it complied with the letter of the law and the intent of the statute. To find otherwise would place a greater burden on Garrison than is required.[11] Therefore, Garrison is entitled to summary judgment.

**III.   CONCLUSION**

As the Court expressed in its previous Ruling on Liberty's Motion for Summary Judgment, the Gwins were in an extremely unfortunate situation. However, there is no genuine issue of material fact for trial that Garrison failed to comply with its legal duties in cancelling the Policy. Accordingly, for the foregoing reasons, Garrison's Motion for Summary Judgment is GRANTED, and the Gwins' claims against this Defendant are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 23rd day of August, 2017.

*[signature: Robert G. James]*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[11] Given the Court's conclusion, it need not reach Garrison's argument that the Gwins' waived a claim against it. The Court finds, instead, that the facts presented further support Garrison's compliance with the statutory mandate, which the Gwins failed to rebut.